Eric Grant, U.S. Department of Justice for the Mandamus Petitioners Echoing the Supreme Court, this Court has said that the remedy of Mandamus is a drastic and extraordinary remedy reserved only for truly extraordinary cases. This is such a case. It is really extraordinary because plaintiffs seek unprecedented standing to pursue unprecedented claims in pursuit of an unprecedented remedy. According to plaintiff's complaint, virtually every single inhabitant of the United States has standing to sue virtually the entire Executive Branch to enforce an unenumerated constitutional right to a climate system capable of sustaining human life, and to enforce that right by means of a judicial order that defendants prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric CO2. Of course, the usual answer to all of that is, well, then they'll lose, or then it will be reversed in appeal if they don't lose. So why is this extraordinary in the sense that the ordinary processes of litigation should not be followed? Your Honor, there are three reasons why this case is extraordinary. One, defendants are most of the Executive Branch, including the President of the United States. Two, plaintiffs assert clearly meritless claims that both exceed the district court's prescribed jurisdiction and presage a constitutional confrontation between the branches. And three, there are serious burdens. But it's a presage. Nothing's happened yet. Your Honor, there has been and is ongoing a confrontation between the two branches. As we've detailed in the declaration and supporting exhibits attached to our reply brief, the burdens of discovery are serious. But those are not the only burdens. There will be, in the district court's own words, a bifurcated trial. That trial is slated to include at least a dozen expert witnesses on the part of the plaintiffs to be followed by a like number of witnesses for the defendants and perhaps by rebuttal experts. And then, as the district court also said, the case will proceed to the remedial phase. How does that differ from an antitrust case or securities case or the ordinary products liability case? That's what you've described as what happens in courts all the time in terms of the relative burdens to the parties. So, I mean, the question is mandamus. Why do we interrupt this at this particular phase? We are allowing this case to proceed where plaintiffs lack standing and where plaintiffs are asserting clearly meritless claims is exceeding its prescribed jurisdiction, which is what the Supreme Court intended. Clearly meritless is not a good reason, right? Not by itself, Your Honor, and the government is cognizant. There are lots of times when motion dismiss is denied, summary judgment is denied, and as the Chief Judge said, the consequences of the plaintiffs lose, and that's it. So discovery, meritless is not enough. The fact that it's discovery is not enough. The fact that it's a trial is not enough, right? So what makes this case different? Your Honor, it's the combination of all three. It's the unique defendants here, most of the executive branch, and the president. I mean, you mentioned the absence of a viable claim, cause of action, and I mean, that might be worth exploring. I mean, the district court said, yes, there is no prior case establishing this, but there always has to be a first case. Ten years ago, there was no right to same-sex marriage, and you know, the courts managed to come up with a claim anyway, right? So the district court just went one step ahead and said, well, I'm going to do it here at the district court level rather than waiting for the Supreme Court to do it. Well, Your Honor, whether the district court's order raises new and important problems or issues of first impression is one of the five Bauman factors that this court has said in Perry v. Schwarzenegger. Well, let me turn this around a little bit and just say, let's say you are a district judge, as Judge Aiken was here, who believes that, you know, she can't deny the motion to dismiss. I mean, she can't grant the motion to dismiss because she believes there is, in fact, a claim. What's she supposed to do? Is she supposed to deny it anyway, just so it can get tested on appeal first? What is the district judge supposed to do? No, Your Honor, in this case, the defendants filed a motion for interlocutory appeal, and the district court appropriately should have granted that motion, and we would not need to be here on that case. Right. But so really what this is, is an objection to the fact that she didn't certify the interlocutory appeal. And maybe many judges would have, but she didn't, and that's the system, and that's the way it's set up. In essence, you're asking us to mandamus her for not having granted the motion for interlocutory appeal, and perhaps this would have been cleaner if you'd really couched it that way. But that's essentially what you're doing. No, Your Honor. I'm — we're — the government here, the defendants, are seeking mandamus in what we believe is a truly extraordinary case. And while mandamus is a — Do you — is there any case that you know of in which mandamus was granted because the district judge recognized standing when there wasn't standing? I'm not aware of a specific case of that nature, Your Honor. I think Cheney v. U.S. District Court is certainly precedent for granting the writ. But they didn't dismiss the case. They did not order — they did not grant mandamus an order of dismissal of the case. No, Your Honor. The Court did not in that case. I think this Court's decision in Credit Suisse is an example of a case where the — this Court granted the writ and ordered the case dismissed. Which one? I'm sorry? Credit Suisse. Right. But that wasn't even exactly a case. It was an enforcement action for another case, right? And the entire issue was whether they had — there was — the whole issue was an order, an interlocutory order. It was just the same as if you granted a final order to — because it was going to interfere with the laws of Switzerland. So it was — and that was true in Cheney, too. There was a complete — the whole case existed at the point that it was decided because they were looking for a disclosure in discovery, which was what the case was about. So there was just a merger in both of those cases. Your Honor, I certainly agree that there is no exact analog to this case. On the other hand, courts do grant mandamus. This Court has granted the writ, and the Supreme Court has granted the writ. And we submit that the unique circumstances of this case, again, virtually the entire executive branch, constitutional claims and non-constitutional claims that lack merit, that both the previous and current administrations agreed should have been dismissed as a matter of law without a trial. And then the — I notice that you're not mentioning discovery. Originally, your claim of why there should be mandamus was discovery, and you're not relying on that anymore. Your Honor, we're relying on that in part. Discovery is burdensome. There are document requests that go back to 1965. There are depositions — there have been a deposition of a White House official in which executive privilege and deliberative process privilege questions were raised. There are scheduled to be depositions of eight Cabinet agencies. I thought they said they're not — they've withdrawn those. They've withdrawn four of the depositions, of the personal depositions of Cabinet officers, but the Rule 30b-6 depositions of eight Cabinet agencies are scheduled to — But not the — not the secretaries. Not the secretaries, personally, no, Your Honor. Remind me, 30b-6? I'm sorry, Your Honor? 30b-6? Rule 30b-6 depositions of those — Remind me what 30b-6 is. I'm sorry, Your Honor, the — essentially the corporate representative depositions of — These are document requests, basically. No, these are depositions, Your Honor. Of the designated person who has the most knowledge over a particular topic, right? Yes, Your Honor. So, I mean, I don't understand the discovery burden in absence of an order from the court. I mean, in Cheney we had an order from the court that was compelling production. In all these other cases, we have the defendants who have sought discovery relief in the district court and seek mandamus from that. But we don't have a court order here. We don't have any — we don't have any dispute about discovery, except you say that it's burdensome. So, why does that justify mandamus? Well, Your Honor, again, that's not the only burden. After that will come a bifurcated trial, a trial that the plaintiffs themselves trumpet to the world will be the trial of the century. And then we go on to remedial proceedings that — at which the district court said in order to guarantee redressability for plaintiffs' claims, for them to have Article III standing, will involve an order that defendants cease their permitting, authorizing, and subsidizing of fossil fuels, an order for defendants to move to swiftly phase out CO2 emissions, an order to develop a national plan to restore Earth's energy balance, and then an order to implement that — But nobody's issued an order like that. There's been no order issued. Nobody's saying the district court — I mean, the district courts obviously have all sorts of control over relief and even over the scope of the case itself. I mean, I would hope if this case did go forward that it would be pared down and focused and — and directed at particular orders or agencies. But to stop it now when there's, you know, all kinds of ways that things can develop, it's not very unusual to have a case that is filed very broadly but decided very narrowly. Yes, Your Honor, but the district court itself admitted on page 28 of its order that this is the kind of relief that's necessary to give plaintiffs redressability, necessary to give plaintiffs Article III standing. At that point, if somebody issues an order like that, you can move for its day. Well, Your Honor, Cheney — in Cheney, the Supreme Court emphasized that mandamus is appropriate to avoid unnecessary constitutional confrontations. And granting the writ in these circumstances is appropriate to enforce that dictum. The district court here is exceeding its prescribed jurisdiction and purporting to hold the trial of the century and then to go on in remedial proceedings that will require essentially the district court to administer Federal environmental and energy policy. Is there any preclusion from — of the government from filing a summary judgment motion once the record is complete? Your Honor, the — technically, no. But this is not an APA case where a complaint is filed, an administrative record is prepared, and parties do cross motions for summary judgment. There's motions for summary judgment all the time without having administrative records in all kinds of cases. Certainly, Your Honor. But our position, again, the position of both the previous administration and the current administration is, accepting all of the allegations pled by plaintiffs as true, these claims lack merit as a matter of law. It should not be necessary to go through discovery, to go through summary judgment proceedings. But if we granted the motion here, why don't we grant it to the next person who comes in and says the same thing? I mean, we'd be flooded, I think, with those — if that were true, we'd be absolutely flooded with appeals from people who think that their case should have been dismissed by the district court. I mean, if we allow — I mean, if we set the precedent on this kind of case, there's no logical boundary to it. There is a logical boundary, Your Honor, and those other cases do not involve, again, virtually the entire executive branch. Well, it may surprise you, but we do get a lot of suits that are filed in this circuit and other circuits against everybody in the government. And lots of — most of the time, they're dismissed by the district court, but sometimes they're allowed to amend, sometimes they're allowed to go forward. It's not — it's not — the subject matter may be unusual and it may be more substantive than those cases, but it's not unusual for plaintiffs to allege all sorts of bills against everybody in the government. With respect, Your Honor, the district court itself, on page 52 of its order, called this case unprecedented. And it is. The combination of the defendants, the combination of the vastly broad remedy sought by plaintiffs and admitted by the district court as necessary for redressability, and the clearly meritless character of the claims asserted, I think, add up to the really extraordinary case that this court has said justifies mandamus. I'd like to reserve the balance of my time. Of course, counsel. Good morning, Your Honors. May it please the Court, I'm Julia Olson, and with me at the counsel's table is Philip Gregory, my co-counsel. I also have the real parties in interest here, 18 of the 21 youth plaintiffs, along with Dr. Hansen. I'd like to thank the Court, and particularly the Court staff, for accommodating all of us today. Your Honors, we know of no federal court ever dismissing a constitutional case on the grounds of mandamus. It would be extraordinary and unprecedented for the Court to do so here, particularly in light of the Court's... There's much unprecedented about this case. Very good. So saying unprecedented, it's not going to help much. As the district court said, this is an unprecedented case. And in some way, saying it's unprecedented sort of undermines your position, because it may suggest we need to take unprecedented action. Tell me, why isn't this case controlled by Bellin? We addressed the question of global warming in Bellin, and said there's no standing in both causality and redressability grounds. I explained very clearly in Judge Smith's opinion there. I just don't see how this case is different. And just as a follow-up, if I'm not persuaded that it's different, is there some way I can deny mandamus anyway? I mean, do you understand what I'm saying? I do, Your Honor. Okay. I'll answer the latter part first. Judge Berzon, Your Honor, was correct when you asked counsel whether there was any case dismissing a case on the basis of standing on a writ of mandamus. And the answer is no. We've been unable to find one. So again, it would be unusual to do that, given that on a motion to dismiss, the standard is whether plaintiffs have plausibly pleaded standing. You're asking the second part of my question. Let's say you don't persuade me that Bellin is distinguishable. I can't speak for my colleagues, but I'm just asking for myself. You're saying I can still deny mandamus. You can still. So if I think Bellin applies, Bellin says no standing. These are people who have no standing. They have no constitutional right to be in court. Why aren't I, if I reach that conclusion, why aren't I required to grant mandamus? Because saying this entire proceeding is illegitimate. That's what Bellin seems to say. People who raise that kind of claim don't belong in federal court. Actually, Your Honor, Bellin was decided on summary judgment. I understand. And we can talk about Bellin. That's why I gave you a two-part question. And you decided to answer the second part first, which is fine. If you wanted to go back to the first part, we can do that. Your Honor, I— You want to distinguish Bellin. But I'm, you know, there is a second part of the question. I say, even if, is there some way I could deny mandamus even if I can't distinguish Bellin? So anyway, answer either half. Yes, Your Honor, because the court is bound by the clear error standard in reviewing the district court's decision on the motion to dismiss— No standing? If I think Bellin controls and these plaintiffs have no standing, what clear error can there be? Well, Your Honor, I think, again, I think it's a question of facts on the record. And I'd like to just try to convince you of why Bellin can be distinguished here, if I may. Okay, that's perfectly fine. I— Bellin—Bellin involved emissions that represented six percent of Washington state's emissions. It was emissions from only five refineries. And here in this case, the emissions that are at stake are the emissions that result from the National Fossil Fuel Energy System that is— And in entire worlds? No, Your Honor, just U.S. emissions here. And that far exceeds the level that this court found was scientifically indiscernible in Bellin. It also exceeds the level that Massachusetts versus EPA said was discernible and cognizable in that case, which was six percent of global emissions. Here we have 16 to 25 percent of global emissions. But in addition, Your Honor, in Bowman, this court made clear that in reviewing the five factors that make up the writ of mandamus standard, that in no instance has the court granted a writ of mandamus when there was only one factor present. So if Your Honor found that there was only clear error with respect to standing, it would still— Well, there's also no cause of action. There's also that problem. There's no precedent whatsoever. The constitutional right to avoid global warming— Let me turn to that, actually. Yeah. But isn't the more important thing here, again, that we have a system for adjudication and that there are lots of cases in which there's no cause of action or people don't have standing? But the problem is, why can't, as in any other case, they simply go through the state, the district court proceedings? In other words, one of the major factors, maybe the major factor, is whether it is they're precluded from fixing this on appeal. And that seems to me to be the most important focus here. I agree, Your Honor. All of the issues for which they complain are wholly correctable on appeal and distinguishable from the issues raised in Cheney and Credit Suisse and the Imri-Peru case. And the only—I mean, as originally filed, there was a lot of focus on discovery as being not focused on—not fixable on appeal. But that doesn't seem to be the focus anymore, at least in large part, I gather, because you have explained and the district court has explained that with the absence of the intervenors, the discovery is going to be cut way back and has been. That's correct, Your Honor. All of the requests for production of documents that plaintiffs had originally propounded when the intervenors were in the case have since been withdrawn. And the discovery going forward will be very narrow, in part because the defendants here concede large portions of the factual allegations in the case, including the fact that climate change poses a monumental threat to public health and safety. You never answered my question. Judge Berzon asked a superseding question, but I hope you can get back to my question. Yes, Your Honor. You may not remember. You said only one factor. I said, well, there's also the second factor that there's no cause of action. There's no claim. I mean, the district court sort of made it up. And it's perfectly fine, but I just want to make sure you realize you didn't answer my question. So you got two factors, and you said, oh, let me address the substantive claim. Yes, I think what we've already taken off the table is that there is no real damage alleged here that's cognizable in a mandamus proceeding. We've also taken off the table any harm related to discovery, and I think what we've taken off the table in terms of the five factors. Just because we're asking questions sequentially doesn't mean we've taken it off the table. You may have taken off the table the satisfaction to use that. There's no evidence in the record that there's any damage except for the defendants. You know, we can talk about that, and I'm perfectly happy to talk about it, and that's what Judge Berzon was asking about. I was just reminding you there was still a question pending for me on the things I was concerned about. If you want to answer that, that's fine. Yes, sir. If you want to sort of give up on it and say, okay, we grant there's no cause of action, we grant there's no standing, but there are all these other things that militate against mandamus, that's a good answer, too. But I thought you were going to address the cause of action aspect of my question. I am. And I don't think you ever did. I'm prepared to talk about the clear error arguments that the defendants have made with respect to two issues. One is defendants argue that there is no federal public trust when the district court found that there was. And secondly, they argue that there should not be a newly recognized right to a climate system capable of sustaining human life. All right. However, what they don't argue on clear error grounds are other claims that are still viable and that the district court found. So, for example, plaintiffs also claim that their rights are being infringed with respect to recognized substantive due process rights, including their rights to personal security and other liberties also recognized by the Supreme Court. I thought the government was arguing that those rights don't exist. No, Your Honor, they don't argue that the district court. I assume I'm reading their briefs to say they do argue that. They say there's no substantive due process right to having the government stop what you claim is global warming. Well, Your Honor, taking that argument, taking that argument. I think they're saying basically there's no claim at all. It's what I read the government's brief to be saying. There's no claim at all. It doesn't exist. There's no such cause of action. So and my response to that is telling me they don't dispute is not going to help. Why don't you persuade me that, in fact, there is such a cause of action? Under that theory, the youth and Brown versus Board of Education would not have a cause of action under the substantive due process or equal protection clauses of the 14th Amendment. One was an equal protection case. The Supreme Court in Plessy had said it's a bad claim, but the Supreme Court reconsidered that. There was certainly a claim raised about that in 1895 when Plessy was decided. It was rejected. That's right, and 50 years later. But there's no substantive due process. There's no Supreme Court case addressing substantive due process to a particular climate that I'm aware of. But there are substantive due process rights to have your personal security, to not have your rights to life infringed, and to not have your rights to property infringed. And these by action from the government, I am not aware of any case that says the government is required to regulate so as to prevent harm caused by others. That's correct, and that's why the complaint is based on systemic affirmative infringements of the plaintiff's right by the some of your claim. Some of your claim is based on a fair amount of it on the use of federal lands. That's correct, Your Honor. So the federal defendants, the Department of Interior primarily authorizes substantial extraction of fossil fuels from federal public lands, oil, gas, and coal. And the complaint actually sets forth the precise numbers over decades that have been and one could come to a different conclusion with regard to failure to regulate and the affirmative use of federal land. They're not necessarily the same thing in terms of the I mean, that's why there's no refinement here at this point. It's all a big mush. That's correct. It's why the factual record, the historical record, the scientific record, the record of the federal defendants actions is very important in this case. And that is also why perhaps the case should be focused a little more clearly as it goes on. And it will be, Your Honor. Why don't you try focusing it for me now? Federal land, what cases that says that the government has an obligation to manage federal land in a way as to stop systemic pollution or any kind of substantive objective? Like that. I don't know if a case like that. It's not a case, Your Honor. It's the U.S. Constitution and the Fifth Amendment substantive due process clause. So this is this is an interpretation of the Constitution that the district court came up with. Right. There's no case saying there is such a right. There's never in the 200 some year history of the United States. There's never been a case that says the United States has to manage federal lands in a way as to generally to improve certain kind of conditions. Right. Well, Your Honor, maybe I'd like to point you to a dissent. You wrote in Lipscomb vs. Simmons at nine sixty two. I could have been wrong. I could have been wrong. Well, it was it was a dissent. I'm often wrong. Your Honor, what you said in that dissent was that the brunt of the state's policy, there was a foster care system. But the brunt of the state's policy falls on the children who, after all, have no say in the matter. Children are too important and far too vulnerable for us to permit the state to trifle with their lives in this fashion. What the complaint alleges is that the federal defendants collectively and through the fossil fuel energy system are affirmatively depriving these young people of their rights to life, liberty and property. And but no, no, no different than anybody else. I mean, they are whatever harm they're suffering is the same as everybody else in the country. And why doesn't that? So Lipscomb was a case about, if I remember correctly, about children, specific actions about specific children, right? Whatever these happen to be children plaintiffs, but they are no different from anybody else in the country, whatever harm they're suffering, they're suffering the same as everybody else. Actually, they are suffering different harm. And the federal defendants have admitted in various documents that children are disproportionately experiencing the impacts of climate change and will going forward. In addition, your honor, they will live far longer than you. They will live to late in the century when the seas are projected by these federal defendants to be 10 feet higher. And in the evidence that's before you in Dr. Wanlis's declaration, he explains that the seas could actually rise as much as 30 feet. So the significance of the harm, the monumental threat that these injuries pose to these plaintiffs is very distinguishable from the rest of the country. That's fine. That gets us back to the standing argument. But you were talking cause of action. You're talking claim. And you were talking specifically about a right to have federal lands managed in a way as to avoid harm. I'm just not sure I know of any case that says that. In fact, I'm sure I don't know of any case that says other than this record below. Well, your honor, before the Citizens United case was decided, or before Heller was decided, there weren't decisions saying that preventing corporate free speech was a violation of their First Amendment rights. So the court considers it a case. So nobody needed to say it, right? That's actually not entirely accurate. But it is true of certain cases. It is true. Baker v. Carr is the one that... Baker v. Carr. Brown v. Plata is very instructive here, where prisoners... Baker v. Carr was a standing case, wasn't it? Baker v. Carr was about... It was during the desegregation era and the reapportionment era. And it was whether it was a political question or not to... It was not cause of action, though. It was a constitutional violation. It was one of the standing doctrines. I forgot. You say political question. It was political question doctrine, but it was a constitutional violation. Reynolds v. Sims, right? Now, the substantive claim was there was one man, one vote, right? That was the claim they came up with. But the standing aspect of it... I mean, Baker v. Carr was a standing case. Your Honor, it was a political question doctrine case, and... But Reynolds v. Sims was what came afterward. There was no precedent on one man, one vote until then. There was no precedent. And similarly, Obergefell v. Hodges is precedential here in terms of the way you look at fundamental rights. Isn't that the kind of stuff we leave to the Supreme Court to tell us? I mean, should the inferior federal courts be creating causes of action that are really, really removed from any precedent? It's actually the province of district courts to develop the factual records, the historical records, here the scientific record that will form the basis of the fundamental rights analysis. So, for example, in Brown v. Board of Education, there were five district courts that developed records on the infringement of the equal protection rights of black children. In Brown v. Plata, that resulted from several district court decisions considering the evidence of harm from the lack of an appropriate medical system due to overpopulation in the California prison system. In a series of other constitutional cases, it's been the work of the district courts considering very serious infringements and deprivations of constitutional rights. Taking your point, though, do you mind returning to standing for a minute? Because standing is jurisdictional. And in particular, I'm concerned about redressability. I looked at the relief sought, and I have serious doubts about whether the harm is redressable within the context of this case. So can you address that, please? Yes, Your Honor. The district court has stated that it will hold a bifurcated trial. So if we prevail on liability, then the court will turn to the remedy phase with all of the evidence before her. And there, what plaintiffs seek is a judicial safeguard against the further deprivation of their rights. And what we've asked for specifically is not that the district court take over the management of the fossil fuel energy system, but that, like in Brown v. Board and Brown v. Plata, the district court order the federal defendants to prepare a plan to come into constitutional compliance. So our remedy is consistent with others. But you have, in those cases, essentially the same type of defendants. And in Brown v. Plata, it's the California prison system. In Brown, the education system. But here you have multiple agencies and multiple players, defendants. That's true, Your Honor. Who ordinarily do not necessarily cooperate with each other by statute or in function. Actually, you'd be surprised about how many working groups and committees and processes these defendants do have to work together on the area of energy and climate. They do meet routinely to discuss and make decisions about those issues. But in Brown v. Board, it was actually a complex remedy that came in 1955, initially from the Supreme Court, and then was carried out in the Fifth Circuit decisions. And there, the remedy required coordination between legislatures and executives. It crossed school district lines and tax boundaries. And it didn't impede the ability of the courts to craft a remedy that could be implemented. And here, all of these defendants, they're within one branch of government, the federal executive. And they do coordinate on a regular basis. And there are plans that are put together among these agency defendants. So we actually believe they're in the best position to really craft a remedy. What happens if the... As I understand it, there is now reconsideration of the entire global warming issue in the current administration. What happens if the executive branch and the judicial branch come to different conclusions about the nature, effects, and projected remedies, appropriate remedies, as to... Thus far, Your Honor, the new defendants in this administration are not taking a different position on the factual issues than the prior administration did. But what they are doing is they're doubling down on fossil fuel extraction and production and... And listen, did you hear my question? I thought I did, Your Honor. Okay. If they took a different position on the facts. My question is, look, we're looking at the future. We let this case go forward. And let's say this court finds, you know, there is global warming going on. And the way to remedy it is by taking the following 15 steps, whatever they are. The Department of Energy has to do certain things. And the Department of Interior has to do other things. And, you know, it comes up with a plan. And let's say the executive branch, while examining the same issue, comes to very different conclusions. It comes to a conclusion, you know, yes, maybe it's going on. It's not very serious. We don't need to do anything about it. Or we need to do very less about it. We need to do different things about it. How can we have the two branches coming up with different solutions to the problem? And who trumps at that point? Your Honor, these... Whose policy at that point prevails? Well, hopefully not President Trump's. These defendants will have an opportunity at trial to present all of the evidence they want. They can bring in experts to try to contest the evidence. Let's say they do that. And the district court simply comes to a different conclusion than the executive branch, working along the same track on the same problem. And they say, yes, we have a different solution. We, the executive branch, have a different solution. Or we don't think it's a problem at all. And we think the taxpayers' money is better spent on other causes. And the district court says, no, you're going to spend resources and you're going to change policies to deal with this problem instead and take money away and resources from those other problems. Who wins at that point? The district court would set a judicial safeguard based upon the factual findings and conclusions of law that she makes after trial. But let me just be clear about something. At least at this point, there is not a factual dispute because the complaint admits that they're denying the federal government's responsibility. But they're not denying the scope of the problem and its immediacy. Is that right? So in order to do that, they would essentially have to withdraw their answer and file a different one. That's correct. So why is there going to be a trial on any of that part? I mean, my understanding is that there was going to be a trial on it because the interveners were denying it. But since the interveners are gone, aren't the admissions in the answer binding for that purpose and the dispute, if any, is about the federal government's responsibility or involvement and whether there is, in fact, a cause of action and so on. And the district court also said that she was going to revisit standing on the basis of the trial. And that has to do with connections between what the federal government has done and the problem, but not the problem. That's correct, Your Honor. So we will have a lot of stipulations as to facts that will be uncontested, and we'll use requests for admissions for that process. That just underlines the problem. I mean, just what Brison points out just underscores the problem. The government is in this litigation. It's admitted certain things. It might or might not be able to take them back. Meanwhile, the executive branch is working on its own policies that may be inconsistent, or is the government now bound in its policies in dealing with global warming by admissions made in this district court case? So basically, they can't take it back. The EPA can't change policy. The Interior Department can't change policies because they made admissions in this case. It doesn't — is that your position? There's three points in response to your question, Your Honor. First, if the scientific evidence changed and there was a need to alter a remedy that was issued, the defendants are always free to go back and — No, no. I am assuming — I am assuming the district court comes up with a reasonable conclusion and finds there is warming going on, and this is a plan to cure it. Meanwhile, the executive branch, working along the same lines, comes to a different conclusion. There is less going on, different policies are needed, resources should be used for something else. I'm not saying, you know, the district court would be wrong about that. At that point, you've got the district court coming out one way, based on stipulations or whatever, and the executive branch coming up to a different policy. Who runs the country at that point? Is it the district judge in Oregon, or is it the president? Your Honor, the defendants would have the flexibility to decide what policies to implement. And they said, look, we have decided we go with the EPA. We have made our own policies, and we think the district court is wrong. Can they just ignore what the district court says? They can't ignore their constitutional obligations under the Fifth Amendment, or an order directing them to come into compliance with the constitution. So your answer is, in that case, the district court would prevail, and whatever policy the executive branch comes up with to deal with this problem, if they come up with any policies at all, or they think it's worthy of dealing with, have to take second place. The decision is made in Oregon, not in Washington, D.C. Your Honor, to the extent that government can't violate Brown v. Board of Education and have segregated schools any longer, if government acts in ways that deprives individuals of fundamental rights, they can't do that constitutionally. I understand your reasons, but that's your answer. Your answer is, if the district court says one thing, and the EPA comes to a different conclusion, the district court prevails. That's your answer. Well, Your Honor, I think it's a little bit more complex than that. How much more complex can it be? There's a judicial standard to protect constitutional rights. Within that, the flexibility lies with the political branches. I don't know why you're running away from it, because that's your position. Why are you running away from it? I'm not running away from it. The answer would be, the district court prevails, and whatever the EPA does on this issue would have to give way. That's your answer. It would be reviewed for constitutionality. That's correct. It would be reviewed for its constitutionality. Because this is a constitutional right, the district court would decide, and whatever the EPA says would be wrong. That's correct. And I think, I see that I'm well over my time, and the important point here— You were using our time, so with the Chief Justice's permission, I think we're okay. Thank you. Why don't you sum up? In conclusion, it's important that the court be that impenetrable bulwark to judicially safeguard against systemic abuses of government power that infringe on the substantive due process rights of these plaintiffs. Do you want us to make a substantive ruling at this point? I don't think you do. We don't, Your Honor. We simply ask that the court lift the temporary stay and send it back to the district court so that these young people can go to trial and present their historical and scientific evidence and make their case. Thank you, Counsel. Thank you. Lawyer Rebuttal. To address the last point, if there is an unenumerated due process right to a stable climate system, if there is a judicially enforceable public trust doctrine, this court should say so now, and we should proceed on that basis. How can we say so now? There is nothing before us that would lead us to say so now. Your Honor, this case is before this court, as it was before the district court, on a motion to dismiss, and the court below— But it's not before this court on a motion to dismiss. That's the problem. It's not. It would be if you had prevailed and they had appealed. Then we would be considering these issues anew, but now it's a mandamus case. You're asking for relief under a slatting scale of factors. It seems to me premature. Well, Your Honor, to get back to that overarching question of the appropriateness of mandamus, it's concededly a drastic and extraordinary remedy. But if there is no standing, as Defendants submit here, then the district court has exceeded its prescribed jurisdiction, and Cheney says that is the traditional use of the writ to confine district courts to their prescribed jurisdiction. If there are no meritorious claims, then this litigation offends the separation of powers. But Cheney didn't do it. Cheney did not, in fact, dismiss the case or order it dismissed. No, Your Honor, but the – Precisely, because it's a very delicate thing to do at this stage. But the Supreme Court emphasized that that is a traditional use of the writ. If a district court exceeds its prescribed jurisdiction, mandamus is appropriate and – and… Do you know how many cases we would have if we had believed that on mandamus? Hundreds, every day. No, Your Honor. I don't think you would have those cases. Well, there's no question we would. If you – if you allow people to come into court because they're displeased with a district court denial of a motion to dismiss, I mean, that's just the plain fact of it. Or on jurisdiction – if you limit it to jurisdictional grounds. Still, I mean, do you know how many cases we decide on jurisdictional grounds at the end of the case and decide there was no jurisdiction? Your Honor, with respect, to be fair, this case is not like the run-of-the-mill case. This case, again, by the district court's own description, is unprecedented. If allowed to go forward, it will offend the separation of powers, particularly where there is no merit to the plaintiff's claims either under the due process clause or under the federal public trust doctrine. The Supreme Court has said that in the absence of any historical, textual, or controlling precedential support for a due process right, a court should decline to fashion a due process right out of thin air. The – Well, how thin air? The D.C. Circuit in the Alec L. case, which the district court said was virtually indistinguishable from this case, dismissed that public trust claim as so insubstantial, implausible, and foreclosed by prior decisions of this court or otherwise completely devoid of merit as to not even involve a federal controversy. So the writ is appropriate here if the court agrees that plaintiffs lack standing or lack any merit to their claims. But do you have any case in which we have granted a mandamus relief with the district court finding, at least making a preliminary finding on standing? I don't think there is one. Your Honor, I don't have an exact analog to this case. I submit that Chaney is good authority. Perry v. Schwartz – But if you have a burdensome discovery order, you can come back here on mandamus with an order issued by the district court as they did in Chaney. So you have – I guess my point is you have remedies available to you at many junctures in this litigation. And I understand it would be judicially efficient for us to decide all these questions now, but that's generally not the way mandamus is working. I'm sympathetic with your jurisdictional arguments. I understand them. But we have to weigh whether or not this is the appropriate forum in which to decide them. Your Honor, that is true. And it is – the writ is reserved for really extraordinary cases. Again, I think the combination of circumstances, including the burden not only of discovery, but the burden of a bifurcated trial that – You came in here with an order to depose the President. That would be one thing, right? You don't have – first of all, they don't want to depose the President. Second of all, you don't have an order. So you don't have any particular discovery order at all. You have none at this point, right? No, Your Honor. There is no particular discovery order that is the subject of this petition. The subject of this petition is litigation that is distracting the executive branch from the discharge of its constitutional duties. And Cheney emphasized that use of the writ is appropriate in that case. It's appropriate to confine district courts to the – Did you ever make a motion to dismiss from the case this defendant, the President and the Executive Office of the President and maybe the Secretaries, and says you ever tried to get them out of the case? No, Your Honor. We moved – in fact, the prior administration in 2015 moved to dismiss the entire case. That's different, but you didn't try to pare it down. No, Your Honor. So the Supreme Court granted mandamus in Cheney to foreclose distraction of the executive branch to confine the district court to its prescribed jurisdiction and to avoid unnecessary constitutional confrontation. This Court should do likewise and put an end to it. Well, suppose we granted the same relief that was granted in Cheney. It's essentially what's happening anyway, right? In other words, what they did was they sent it back to the court of appeals and said, find some other way to deal with this. And that's what's going on in the whole discovery dispute anyway. They didn't dismiss the case and they didn't preclude discovery, either of those things. So what the mandamus was in Cheney was about something that's not even happening here anymore. It might have been at one point, but it's not happening anymore. With respect, Your Honor, we're asking this Court to apply the principles set forth by the Supreme Court in Cheney. Well, that principle seemed to be you don't dismiss the case under mandamus. It was asked for and it didn't happen. Your Honor, this Court has exceeded its prescribed jurisdiction. This Court is on a collision course with the executive branch, as Judge Kaczynski's questioning illustrated. Cheney says the writ is appropriate in that case and the Court should grant the writ. Thank you. Before you sit down, I just wanted to understand the status of the case. The case has been stayed. Is a discovery period still set in the case or are there discovery deadlines? Or is that subject to renegotiation, depending on whether the stay is lifted or not? Your Honor, I'm not aware of a specific discovery deadline. I believe the Court and the parties contemplated, or the Court and the plaintiffs contemplated a trial in February. That's the so-called trial of the century. But I presume that that schedule is no longer possible. Who called it the trial of the century? The plaintiff's counsel, Your Honor. Any concluding remarks you want to make? No, thank you, Your Honor. This Court should grant the writ and put an end to this case. Thank you, counsel. Thank you both for your arguments today. The case, as heard, will be submitted for decision and we will be in recess for the morning.
judges: Kozinski, Thomas, Berzon